UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAMUEL OWUSU,

    Petitioner,

v.

THOMAS FEELEY,
in his official capacity as Field Office
Director, Buffalo Field Office, U.S.
Immigration & Customs Enforcement;

WILLIAM BARR,
in his official capacity as Attorney
General, U.S. Department of Justice;

JEFFREY SEARLS,
in his official capacity as Acting Assistant
Field Office Director and Administrator,
Buffalo Federal Detention Facility; and

KEVIN McALEENAN,
in his official capacity as Acting Secretary,
U.S. Department of Homeland Security,

    Respondents.

19-CV-694
ORDER

---

On June 10, 2018, the petitioner, Samuel Owusu, climbed over the fence marking the boundary between the United States and Mexico north of Tijuana. Docket Item 11-1 at 2. He was fleeing violence and persecution in his home country of Ghana because of his sexual orientation. Docket Item 1 at 8-10. And he now petitions this Court for a writ of habeas corpus, seeking release from his detention under 28 U.S.C. § 2241. *Id.* at 28.

For the following reasons, this Court finds that Owusu is a member of the class certified in *Abdi v. Duke*, 323 F.R.D. 131, 145 (W.D.N.Y. 2017), and was therefore entitled to a bond hearing at which the government carried "the burden of demonstrating—by clear and convincing evidence—why continued detention [was] warranted." *Id.* This Court, however, cannot order compliance with that injunction. Therefore, and because Owusu's claims in this proceeding are duplicative of his claims as an *Abdi* class member, this proceeding is stayed while Owusu pursues his remedies as a member of the *Abdi* class.

## **BACKGROUND**

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security, Immigration and Customs Enforcement. Other facts, provided by Owusu, are undisputed.

Owusu is a thirty-nine-year-old gay man who is a citizen and native of Ghana. Docket Item 1 at 3, 8. Homosexuality is outlawed in Ghana, and while he lived there, Owusu was threatened or attacked at least six times due to his sexual orientation. *Id.* at 8. In January 2016, Owusu fled Ghana to escape the violence. *Id.* at 9.

Owusu first obtained a visa and fled to Equatorial Guinea. *Id.* But gay people are treated just as badly there as they are in Ghana, and so Owusu returned to Ghana hoping that "the anti-gay group in his community would have forgotten about him in the time that had passed since he left." *Id.* at 10. That hope was unfounded: upon his return to Ghana, Owusu found that the group not only remembered him, they also threatened his life. *Id.* And so he fled once more. *Id.*

2

On June 10, 2018, Owusu unlawfully entered the United States near Otay Mesa, California. Docket Item 11-1 at 2. A border patrol agent spotted Owusu and another person about 500 yards north of the United States/Mexico International Boundary. *Id*. Owusu and the other person were arrested and transported to the Chula Vista Border Patrol Station for processing. *Id*. Once there, Owusu admitted that he had climbed the border fence to enter the United States and that he had not been inspected by an immigration officer. *Id*. He stated that he feared returning to Ghana. *Id*.

By August 27, 2018, Owusu was detained at the Albany County Jail in New York State. *Id*. at 3.[1] On that day, an asylum officer deemed Owusu's fear of returning to Ghana to be credible, and he was transferred out of expedited removal proceedings. *Id*. Owusu's removal hearing—part of more formal removal proceedings—was scheduled for October 31, 2018, at the immigration court in Batavia, New York. *Id*. at 4.

On September 5, 2018, DHS formally decided to detain Owusu pending a final administrative determination in his case. *Id*. Owusu asked that the decision to detain him be reviewed by an immigration judge. *Id*. His removal hearing then was rescheduled for November 15, 2018, to coincide with a bond hearing on the custody question. *Id*.

On November 15, 2018, Owusu's attorney requested an adjournment of proceedings, and they were rescheduled for December 13, 2018. *Id*. On that date, the removal hearing was delayed again, but the immigration judge held Owusu's bond hearing. *Id*. The next day, the immigration judge denied Owusu's request for a change

---

[1] The record is silent as to why DHS transferred Owusu from Southern California to the Albany County Jail. But the government does not dispute that it has detained Owusu for this entire period of time.

3

in custody status. *Id.* A week later, Owusu was transferred to the Buffalo Federal Detention Center, in Batavia, New York. *Id.* at 5.

On January 29, 2019, in light of Owusu's decision to appeal the immigration judge's decision denying him bond to the Board of Immigration Appeals ("BIA"), the immigration judge issued a memorandum decision explaining his reasoning. Docket Item 11-2 at 17-19. The judge wrote that under 8 C.F.R. § 1236.1(c)(8), it was Owusu's "burden to establish eligibility for bond by proving that his 'release would not pose a danger to property or persons, and that he is likely to appear for future proceedings.'" *Id.* at 18 (quoting § 1236.1(c)(8)). The immigration judge found that Owusu posed a risk of flight and that "there is no amount of bond that could ensure [his] appearance in future proceedings." *Id.* at 18-19. The immigration judge supported that conclusion by observing that Owusu

> has no fixed address. He has no bank accounts, no real property, and no personal property. He has no close family members in the United States.[2] He has not resided in the United States for a considerable amount of time. When considering the likelihood of relief, [Owusu] has a marginal asylum claim at best. Moreover, [Owusu] testified that he paid $150 to a driver to take him to the border. There, he was shown where he could jump over a metal wall. The Court interprets this conduct as tantamount to aiding and abetting a smuggler. Such an activity is a threat to the enforcement of U.S. immigration laws and can potentially endanger other individuals.

*Id.* at 18.

Owusu's removal hearing began on April 12, 2019, and continued on May 2, 2019. Docket Item 11-1 at 6. On May 2, 2019, an immigration judge ordered Owusu removed from the United States to Ghana and denied Owusu's application for relief

---

[2] Owusu's sister is a legal permanent resident who lives in New Jersey and would permit Owusu to live with her if he was released from custody. Docket Item 1 at 11.

4

from removal.  *Id.*  On May 24, 2019, Owusu appealed that decision to the BIA.  *Id.*  His appeal on the merits remains pending.

On June 24, 2019, the BIA issued a decision on Owusu's appeal from the immigration judge's bond decision.  Docket Item 13-2.  The BIA determined that the immigration judge's decision was not "clearly erroneous" and that it was "not persuaded that [Owusu] has established that he is not a flight risk."  *Id.* at 3.

On May 29, 2019, Owusu filed a petition for a writ of habeas corpus in this Court.  Docket Item 1.  On July 12, 2019, the government responded, Docket Items 11 and 12, and on July 24, 2019, Owusu replied, Docket Item 13.  On August 8, 2019, this Court heard oral argument.  Docket Item 15.

## **DISCUSSION**

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  Owusu makes several arguments challenging the validity of his detention.  Docket Item 1.  First, he argues that the immigration judge's "requirement that [he] carry the burden of proof in his bond hearing violated § 1226(a) because it contravened congressional intent in drafting the statute, which explicitly places the burden on noncitizen[s] under § 1226(c)(2) but not § 1226(a)."  *Id.* at 25.  Second, he argues that requiring him "to bear the burden in bond hearings pursuant to § 1226(a) violates his due process rights."  *Id.* at 26.  Third, he argues that his detention violates the Administrative Procedure Act, 5 U.S.C. § 706(2), because the immigration judge's requirement that he "carry the burden in his § 1226(a) bond hearing was rooted in an

5

invalid agency interpretation." *Id.* Finally, he argues that the immigration judge relied exclusively on "arbitrary factors that did not militate against a bond and totally disregarded both the circumstances of [Owusu] and [Owusu's] evidence in support of his request for a bond" and thus violated his due process rights. *Id.* at 27.

In response, the government argues that an error underpins many of Owusu's arguments: according to the government, Owusu is detained under 8 U.S.C. § 1225(b) and not § 1226(a). Docket Item 12 at 13-14. Therefore, it argues, "all aspects of the Petition addressing [Owusu's] custody pursuant to § 1226(a) are inapplicable to the case at bar." *Id.* at 14. And the government otherwise disagrees with Owusu's claims that his detention has violated due process. *Id.* at 14-26.

In reply, Owusu does not necessarily contest that he is detained under § 1225(b). Docket Item 13. Instead, among other arguments,[3] he contends that if he is detained under 8 U.S.C. § 1225(b), then he is a class member in *Abdi v. Duke*, 323 F.R.D. 131, 145 (W.D.N.Y. 2017) (defining class). Docket Item 13 at 11-12. Under the *Abdi* preliminary injunction, the government must provide *Abdi* class members with "individualized bond hearings and establish by clear and convincing evidence that an asylum-seeker is a flight risk or a danger to the community to justify continued detention." *Abdi v. Duke*, 280 F. Supp. 3d 373, 379 (W.D.N.Y. 2017). Therefore, he

---

[3] Owusu does argue that in light of the *Chenery* Doctrine, *see Sec. and Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80 (1943), and principles of estoppel, the government may not now argue that he is detained under § 1225(b) instead of § 1226(a). Docket Item 13 at 4-11.

6

argues, the government is in violation of the *Abdi* injunction if he is an arriving alien subject to § 1225(b) detention.[4]

At oral argument, the government rejected Owusu's contention that he may be an *Abdi* class member. According to the government, § 1225(b) identifies different types of arriving aliens. Because Owusu did not come to the border and present himself for admission, it argues, he is not detained under § 1225(b)(1) but instead is detained under § 1225(b)(2). According to the government, that statute authorizes detention for "other aliens" including those who, like Owusu, were picked up by border patrol immediately after illegally entering the United States within 100 miles of the border. The government contends that while § 1225(b)(1) mandates detention without bond, § 1225(b)(2) is silent as to whether bond hearings are required, and therefore it is

---

[4] On September 5, 2018, the Second Circuit remanded an interlocutory appeal in *Abdi* "to the district court for further consideration in light of the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)." *Abdi v. Brophy*, 2018 WL 7021866, at *1 (2d Cir. Sept. 5, 2018). "On October 31, 2018, [the government] filed a motion to vacate that part of the Court's preliminary injunction requiring that individualized bond hearings be held for all members of the subclass," and on "December 13, 2018, [it] filed a motion to decertify the subclass." *Abdi v. McAleenan*, 2019 WL 1915306, at *1 (W.D.N.Y. Apr. 30, 2019). Those motions remain pending. While they are pending, Judge Wolford has clarified that notwithstanding the government's position regarding the "vitality of the Court's preliminary injunction post-*Jennings*," it may not "ignor[e] a duly-issued court-ordered injunction." *Id.* at *3. Although the government is "certainly entitled to challenge the Court's preliminary injunction by appealing that decision or moving to vacate the injunction, . . . [it is] *not* entitled to simply disregard the Court's Orders." *Id.* (emphasis in original). In other words, until Judge Wolford decides whether to decertify the class or vacate the injunction, class members must receive bond hearings where the government must "prove by clear and convincing evidence that continued detention is necessary," *Abdi v. Duke*, 280 F. Supp. 3d 373, 411 (W.D.N.Y. 2017), "*immediately*" after a class member "has been detained for over six months," *Abdi v. McAleenan*, 2019 WL 1915306, at *3 (emphasis in original).

7

permitted to offer § 1225(b)(2) aliens bond hearings.[5]  Because Owusu is a § 1225(b)(2) alien and because he received a bond hearing, the government argues that he is not an *Abdi* class member.

Judge Wolford issued the *Abdi* class certification order on December 19, 2017. *Abdi v. Duke*, 323 F.R.D. 131, 145 (W.D.N.Y. 2017).  This Court has reviewed that order and does not see the government's distinction.  On the contrary, Judge Wolford certified the following class and subclass:

> Class: All arriving asylum-seekers who have passed a credible fear interview and who are or will be detained at the Buffalo Federal Detention Facility and who have not been granted parole.
>
> Subclass: All arriving asylum-seekers who are or will be detained at the Buffalo Federal Detention Facility, have passed a credible fear interview, and have been detained for more than six months without a bond hearing by an immigration judge.

*Id*.  Thus, to be a member of the class and subclass, an alien must meet five requirements: (1) he is an arriving alien, (2) he is an asylum-seeker, (3) he is or will be detained at the Buffalo Federal Detention Facility, (4) he has passed a credible fear interview, and (5) he has been detained for more than six months without a bond hearing by an immigration judge.

---

[5] This argument appears to be at odds with the statutory text and *Jennings v. Rodriguez*, where the Supreme Court held that "§§ 1225(b)(1) *and (b)(2)* mandate detention of aliens throughout the completion of applicable proceedings."  138 S. Ct. 830, 845 (2018) (emphasis added).  It also is inconsistent with 8 C.F.R. § 1003.19(h)(2)(i)(B), which provides that "an immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following classes of aliens . . . [including a]rriving aliens in removal proceedings."

Owusu meets all five requirements.[6] First, by the government's own admission, he is an arriving alien. Docket Item 12 at 2 ("Petitioner is afforded the least protection of law because he is an arriving alien.").[7] Second, he is an asylum-seeker. Docket Item 11-1 at 3. Third, he is detained at the Buffalo Federal Detention Facility. *Id.* at 7. Fourth, he has passed a credible fear interview. *Id.* at 3. And fifth, as of December 11, 2018, he was detained for more than six months without a bond hearing by an immigration judge. *Id.* at 2, 4.[8] Although Owusu did receive a bond hearing two days later, on December 13, 2018, he was a member of the class and subclass as of December 11, 2018, and the *Abdi* injunction required the government to provide Owusu a bond hearing at which the government bore the burden of proof by clear and convincing evidence, not the bond hearing he received. *See Abdi v. McAleenan*, 2019 WL 1915306, at *3; *Abdi v. Duke*, 280 F. Supp. 3d at 411.

---

[6] The government claims that Owusu is detained under § 1225(b)(2)(A). Docket Item 12 at 16. In *Abdi*, the government argued against the class having "common questions of law . . . because bond hearings are not required for arriving aliens detained under § 1225(b)(2)(A)." *Abdi v. Duke*, 323 F.R.D. 131, 141 (W.D.N.Y. 2017). The court apparently rejected that argument. *See id.* at 141-42. The order therefore plainly considers the possibility that § 1225(b)(2)(A) aliens may be part of the class and subclass.

[7] Although the government has waived any argument that Owusu is not an arriving alien, it is not clear that Owusu fits the regulatory definition of that term in 8 C.F.R. § 1.2 and 8 C.F.R. § 1001.1(q). At no point was Owusu (1) "an applicant for admission coming or attempting to come into the United States at a port-of-entry," (2) "an alien seeking transit through the United States at a port-of-entry," or (3) "an alien interdicted in international or United States waters and brought into the United States by any means, whether or not a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. §§ 1.2, 1001.1(q).

[8] This Court recognizes that Owusu's attorney requested an adjournment of proceedings on November 15, 2018, Docket Item 11-1 at 4, but nothing in the *Abdi* class certification order suggests that this is a material fact. *See Abdi*, 323 F.R.D. at 145.

For the foregoing reasons, Owusu is a member of the *Abdi* class. He does not suggest that he wishes to opt-out. Docket Item 13 at 11-12. On the contrary, he argues that he deserves relief under the *Abdi* injunction. *Id.*

Because he is an *Abdi* class and subclass member, Owusu's claims in that proceeding duplicate his claims in this proceeding. *See* Petition for a Writ of Habeas Corpus at 16-17, *Abdi v. McAleenan*, No. 17-CV-721 (W.D.N.Y. July 28, 2017), Docket Item 1 (seeking a "bond hearing before an immigration judge where the government bears the burden of justifying further detention" under the due process clause). "As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). "Because of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending, a court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions." *Id.* And there is a "well-settled principle in this Circuit that 'where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second.'" *First City Nat. Bank and Tr. Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (quoting *Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986)).

For the foregoing reasons, Owusu's petition includes claims that are duplicative of the *Abdi* petition. *See Groseclose v. Dutton*, 829 F.2d 581, 584-85 (6th Cir. 1987) (finding that case should have been consolidated with pending class action); *Goff v. Menke*, 672 F.2d 702, 704 (8th Cir. 1982) (concluding that "the district court erred in

granting . . . any relief when the issues had already been preliminarily resolved and were pending final resolution in a class action to which plaintiff, as a class member, was a party."). The *Abdi* preliminary injunction is still in full force and effect, *see Abdi v. McAleenan*, 2019 WL 1915306, at *3, and this Court agrees that Owusu deserves the hearing he seeks under *Abdi*. This Court therefore expects that the government will move swiftly and provide Owusu with a bond hearing that complies with the *Abdi* preliminary injunction as soon as practicable.

But "[s]anctions for violations of an injunction . . . are generally administered by the court that issued the injunction." *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 236 (1998) (citing *Stiller v. Hardiman*, 324 F.2d 626, 628 (2d Cir. 1963)); *see also Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 454 (1932) ("proceeding for civil contempt for violation of [an] injunction should be treated as part of the main cause"). Therefore, this Court may not order compliance with that injunction. Owusu must seek relief in the *Abdi* proceeding. If the government fails to comply with the *Abdi* injunction after this order, Owusu may, for example, "seek the cooperation of the class representative in [*Abdi*] or . . . intervene in the [*Abdi*] action" to obtain relief. *Goff*, 672 F.2d at 704. In the meantime, this Court stays this proceeding and holds Owusu's remaining claims in abeyance.

If the government fails to provide Owusu with an *Abdi* bond hearing, Owusu may move to lift the stay. For example, (1) if Judge Wolford grants the government's motion to decertify the class or vacates the *Abdi* preliminary injunction before Owusu obtains the relief to which he is entitled, or (2) if Judge Wolford disagrees with this opinion and concludes that for some reason Owusu is not a member of the class, Owusu may again

11

seek relief in this Court.[9]  In other words, if Owusu does not get the relief he seeks as an *Abdi* class member, he may return to this Court so that this Court can address his remaining arguments.[10]

**CONCLUSION**

For the foregoing reasons, Owusu's petition is duplicative of ongoing litigation before Judge Wolford in *Abdi v. McAleenan*, docket number 17-CV-721.  This proceeding therefore is stayed and Owusu's remaining claims are held in abeyance pending resolution of *Abdi* or his receipt of a bond hearing under the *Abdi* injunction.  The respondents shall file a status report when Owusu receives an *Abdi* bond hearing.

SO ORDERED.

Dated: August 20, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[9] Despite concluding that the parties do not materially dispute that Owusu is, in fact, detained under § 1225(b), this Court does not decide whether Owusu may prevail on his claims that the government must nonetheless treat him as a § 1226(a) detainee in light of the *Chenery* Doctrine or general principles of estoppel.  *See* Docket Item 13 at 4-11.  Indeed, in its Notice to Appear charging Owusu with being subject to removal from the United States, DHS did *not* check the box saying that he was an "arriving alien," and instead told him that he was "an alien present in the United States who has not been admitted or paroled.  [He] is an applicant for admission."  Docket Item 11-2 at 7.  And in its "Notice of Custody Determination," DHS notified Owusu that it intended to detain him "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations."  *Id.* at 9.  That section is § 1226, not §1225(b).  What is more, Owusu may not be an arriving alien as defined in 8 C.F.R. §§ 1.2, 1001.1(q).  *See* note 7, *supra*.

[10] If Judge Wolford vacates the *Abdi* preliminary injunction before Owusu receives an *Abdi* bond hearing but does not decertify the class, Owusu may be required to opt out of the *Abdi* class to individually litigate his habeas petition.

12